Dustin M. Dow (Maryland Bar No. 20533)
ddow@bakerlaw.com
Christina J. Moser (pro hac vice to be applied for)
cmoser@bakerlaw.com
Ohio Bar No. 0074817
BAKER & HOSTETLER LLP
127 Public Square Suite 2000
Telephone: 216.621.0200

*Attorneys for Plaintiff Progressive Insurance Company*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### SOUTHERN DIVISION

| | |
|---|---|
| **PROGRESSIVE CASUALTY INSURANCE COMPANY,** an Ohio corporation, | ) ) ) **CASE NO. 8:25-CV-3376** |
| Plaintiff, | ) ) ) |
| vs. | ) **JURY TRIAL DEMANDED** |
| **PROGRESSIVE TOWING & HAULING, LLC**, a Maryland Limited Liability Company, | ) ) ) ) ) |
| Defendant. | ) |

**COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, TRADEMARK DILUTION AND DECEPTIVE TRADE PRACTICES**

Plaintiff, Progressive Casualty Insurance Company ("Plaintiff" or "Progressive"), files this Complaint against Defendant, Progressive Towing & Hauling, LLC ("Defendant"), and, as grounds, alleges as follows:

## JURISDICTION AND VENUE

**(Applicable to and Incorporated in All Counts)**

1. This is a Complaint for trademark infringement, unfair competition, and dilution under 15 U.S.C. §§ 1051-1127 (hereinafter the "Lanham Act") and for trademark infringement, unfair competition, and deceptive trade practices under the laws of the State of Maryland relating to Defendant's copying of Plaintiff's Progressive-formed word marks, including copying Plaintiff's particular stylization and color scheme for its Progressive-formed logo.

2. This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a); 15 U.S.C. §§ 1114, 1116, 1121, 1125; and upon the principles of pendent jurisdiction. Jurisdiction over the cause of action for unfair competition under the laws of the State of Maryland arises under 28 U.S.C. § 1338(b) because the claim of unfair competition is joined with substantial and related claims under the federal trademark law. Jurisdiction over all causes of action under the laws of the State of Maryland arises under 28 U.S.C. § 1367 because all of the state claims are so related to the federal Lanham Act claims that they form part of the same case or controversy. In the alternative, jurisdiction over all causes of action under the laws of the State of Maryland arises under 28 U.S.C. § 1332 because this action is between citizens of different States and the matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

3. This Court has personal jurisdiction over Defendant in that Defendant is a Limited Liability Company organized under the laws of the State of Maryland, has its principal place of business in the State of Maryland, and committed the complained-of acts in the State of Maryland.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this District and a substantial part of the events and omissions giving rise to the claims herein occurred in this District.

## THE PARTIES

**(Applicable to and Incorporated in All Counts)**

5. Plaintiff Progressive Casualty Company ("Plaintiff" or "Progressive") is a corporation duly organized and existing under the laws of the State of Ohio, maintaining its principal place of business at 300 North Commons Blvd., Mayfield Village, Ohio 44143.

6. Upon information and belief, Defendant Progressive Towing & Hauling, LLC. ("Defendant") is, and at all times material hereto has been, a limited liability company organized under the laws of the State of Maryland, having its principal place of business at 7603 Zenith Way, Clinton, Maryland, 20735.  Upon information and belief, Defendant did, at the times herein mentioned, and still does own, control, manage, operate, and maintain a vehicle towing and hauling service.

## PROGRESSIVE'S BUSINESS AND TRADEMARK RIGHTS

**(Applicable to and Incorporated in All Counts)**

7. Plaintiff and/or its predecessors in interest have been operating in the insurance business since 1937 under the PROGRESSIVE name.  Plaintiff and its affiliated companies use the PROGRESSIVE mark in connection with, among other services, property and casualty insurance services; insurance underwriting for auto, liability, finance, mobile home, motorcycle,

RV, and others; adjusting and claims processes; insurance premium quoting; and the provision of insurance-related information and services over the Internet and mobile applications.

8. Plaintiff currently has over 277 offices nationwide and offers auto insurance to drivers in all 50 states and the District of Columbia.  Over 40,000 independent insurance agencies sell Plaintiff's insurance nationwide.

9. Plaintiff has become known to the general public throughout the United States as a reputable company dedicated to serving its customers.  As a result, Plaintiff's trademarks and the goodwill associated therewith are of inestimable value to Plaintiff.

10. Plaintiff uses a distinct stylized, italic typeface for its trade dress (the "PROGRESSIVE (Stylized) Mark") as depicted here: *PROGRESSIVE* , as embodied in U.S. TM Reg. No. 1971522.

11. Furthermore, since 1994, the PROGRESSIVE (Stylized) Mark is often depicted in a distinct blue color, as shown below, which Plaintiff uses as its trade dress throughout its marketing materials:


.

12. In addition to its corporate name, Progressive Casualty Insurance Company, Plaintiff owns common law trademark rights and federal trademark registrations for numerous trademarks incorporating PROGRESSIVE, many with the distinct stylized, italic typeface and/or a claim to the color blue as well as the word PROGRESSIVE itself in any font, style, or color (collectively with the PROGRESSIVE (Stylized) Mark, the "PROGRESSIVE Marks").

13. By way of example, Progressive owns U.S. Reg. No. 3491370 for the blue stylized PROGRESSIVE as applied to a vehicle, depicted below.



14. A chart featuring some of Plaintiff's federal trademark registrations is attached hereto as **Exhibit A**.

15. The PROGRESSIVE Marks have been continuously used and promoted by Plaintiff and its predecessors in the course of business for more than eighty-eight years.

16. According to a March 2025 market share report by the National Association of Insurance Commissioners (NAIC), Plaintiff had the second largest market share among property and casualty insurers in the United States in 2024.

17. Plaintiff spends billions of dollars annually to promote its services offered in connection with the PROGRESSIVE Marks throughout the United States, reporting 2024 advertising costs of $4.0 billion.

18. Plaintiff widely promotes its services, including on its website, through affiliates, in television advertisements, Internet advertisements, print publications, billboards, and through sports sponsorships.

19. Plaintiff's award-winning advertising campaigns, widely-recognized for their clever and humorous approach including "Flo," the iconic Progressive spokeswoman and Parenta-

Life Coach "Dr. Rick," who counsels people on how *not* to become their parents, have helped to transform PROGRESSIVE into a household name.

20. Plaintiff has long been committed to a diverse array of high-profile sport sponsorships, including in more recent years partnerships with Joe Gibbs Racing in NASCAR, the Rangers Sports Network, the Rocket League Championship Series, Powerboat P1, SuperMotocross League, MotoAmerica, the Bassmaster Classic Celebrity Pro-Am, and the Professional Bull Riders' Unleash the Beast national tour.  For more than seventeen years, the PROGRESSIVE Marks have been displayed to millions of baseball fans at Progressive Field, the home of the Cleveland Guardians Major League Baseball team, as shown below.



21. Plaintiff is nationally recognized for its strong culture, purpose, and values.  For eight years in a row, Progressive has placed on the FORTUNE 100 Best Companies to Work For® list.

22. Plaintiff has long invested in the future of its customers and their communities. Since 2013, Plaintiff has donated more than 1,100 vehicles to veterans and their families as part of their Keys to Progress® program, which provides reliable transportation for veterans, military-related organizations, and veteran-owned small business owners across the country. For the last five years, Plaintiff has published a Corporate Sustainability Report, detailing its ongoing progress on environmental goals, such as being carbon neutral by the end of 2025, as well as numerous other environmental, social, and governance (ESG) activities aimed at improving the communities in which it does business.

23. Plaintiff supports a number of charitable efforts through the Progressive Insurance Foundation, giving millions of dollars to thousands of charities. Plaintiff also encourages its employees' charitable efforts, through its Name Your Cause program, where employees choose a charity they wish to support and Plaintiff donates a sum of $5 million, divided across each eligible charity selected, and through a paid Volunteer Time Off program, where employees are able to receive one paid day each year to volunteer at a charitable organization of their choice. In 2024, Plaintiff's employees participated with more than 80,000 volunteer hours used to support hundreds of organizations. In addition, Plaintiff has worked with a number of national nonprofits, including PCs for People, a nonprofit organization specializing in refurbishing and upgrading computers for students and those in need and Family Promise, the nation's leading nonprofit organization focused on family homelessness with nearly 200 affiliates across the United States. Plaintiff provides time and resources to support educational efforts, including establishing the Progressive Educational Partnership Program (PEPP), which gives high school students in IT tech prep school a firsthand taste of what a career in IT is like, and developing and giving "Crash Courses" to help students better understand how financial literacy and classroom skills apply to real-life situations. Plaintiff

gifts vehicles to veterans facing tough challenges through the Keys to Progress® vehicle giveaway program, which has gifted more than 1,100 vehicles to help veterans in need, including some vehicles to veteran-focused organizations and veteran-owned small businesses to provide the types of transportation they need to better serve their communities.

24. Plaintiff supports disaster relief efforts with direct donations and partnerships. In 2024, Plaintiff supported those recovering from Hurricane Helene and Hurricane Milton by committing over three million dollars to various organizations to help Plaintiff's customers, employees, agents, and communities.

25. Through its investment, effort, and culture of social responsibility, all carried out using the PROGRESSIVE Marks, Plaintiff has accrued inestimable goodwill in the PROGRESSIVE Marks.

26. As a result of Plaintiff's long-standing, continuous, and widespread use, the PROGRESSIVE (Stylized) Mark and PROGRESSIVE Marks are widely recognized by consumers in connection with insurance and related services.

27. Among Plaintiff's many insurance offerings, it offers vehicle owners insurance and related services, including Progressive's 24/7 Roadside Assistance which is an extra coverage consumers can add to their policies. Services are provided by a third party, including, for example, vehicle towing, winching, jump-starts, fuel delivery, vehicle lockout, and flat tire change. Roadside assistance is available for car insurance policies as well as motorcycles, RVs, and some vehicles used for towing. Attached hereto as **Exhibit B** is further information about Progressive's Roadside Assistance program.

28. Plaintiff actively polices possible infringements of its valuable trademarks and service marks. Plaintiff's local employees across the country report potential infringements of

Plaintiff's marks, then cease and desist letters are sent when Plaintiff determines an infringement is occurring. Further, outside legal counsel is retained to handle infringement actions if the initial cease and desist letter is unsuccessful.

29. Plaintiff has not authorized Defendant to utilize any PROGRESSIVE Marks in any manner at any time.

### DEFENDANT'S INFRINGING ACTIONS
**(Applicable to and Incorporated in All Counts)**

30. Upon information and belief, Defendant operates a towing and hauling business.

31. Defendant's tow trucks prominently feature use of the following logo (the "Infringing Logo"), which uses the term PROGRESSIVE in the same stylized, italic font in the same shade of blue as that used by Progressive, as depicted below:



32.     Upon information and belief, Defendant offers towing and hauling services in connection with the Infringing Logo ("Infringing Services").

33.     Progressive offers its insureds, through a third party, services similar to Defendant's, including vehicle towing, winching, jump-starts, fuel delivery, vehicle lockout, and flat tire change services.

34.     In or around March 2025, Progressive became aware of Defendant's unauthorized uses of the Infringing Logo in connection the Infringing Services.

35.     Upon information and belief, Defendant is intentionally offering its towing and hauling services under the Infringing Logo with full knowledge that such use is without Plaintiff's authorization or consent and that such unauthorized use is likely to confuse the public to the effect that there is a connection or association between Plaintiff's services and Defendant's services, when there is not.

36.     Given Plaintiff's position in the insurance services market, as well as the length of its use of its trademarks, including the PROGRESSIVE (Stylized) Mark, it is nearly inconceivable that Defendant—offering services that are very similar or related to Plaintiff's—chose to combine the term "PROGRESSIVE" with a stylized italic font and blue color scheme highly similar to Plaintiff's without knowledge of Plaintiff and its PROGRESSIVE (Stylized) Mark or the PROGRESSIVE Marks.  Defendant's only possible purpose in adopting and using the Infringing Logo is to create a likelihood of confusion with the PROGRESSIVE Marks.

37.     Upon information and belief, Defendant has continued its infringing conduct despite letters from Plaintiff's counsel dated May 6, 2025 and September 10, 2025 demanding that Defendant cease using the PROGRESSIVE Marks.

38. Defendant's unlawful activities will result in irreparable harm and injury to Plaintiff in that, among other things: Defendant deceives the relevant public as to the origin of Defendant's services; Defendant falsely represents a sponsorship and/or association between Plaintiff and Defendant; Defendant wrongfully trades and capitalizes upon Plaintiff's reputation and the goodwill and commercial value of its marks; Defendant dilutes the distinctiveness of Plaintiff's PROGRESSIVE Marks, and Defendant irreparably injures Plaintiff's reputation and goodwill.

## COUNT I

*Federal Trademark Infringement [15 U.S.C. § 1114(1)]*

39. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as though the same were fully set forth herein.

40. This count arises under the Lanham Act, in particular, 15 U.S.C. § 1114(1).

41. Plaintiff's registered U.S. trademarks, as set forth in the preceding paragraphs and Exhibit A hereto, have been used throughout the United States for decades and are well known to members of the public. The public generally associates and identifies the PROGRESSIVE Marks, including but not limited to the PROGRESSIVE (Stylized) Mark as embodied in U.S. TM Reg. No. 1971522, with Plaintiff.

42. Defendant's uses of the Infringing Logo are likely to cause confusion, mistake and deception among the relevant public as to the source of the services provided, and are likely to deceive the relevant public to the effect that the services being sold by Defendant originate from, are associated with and/or are otherwise authorized by Plaintiff, all to the damage and detriment of Plaintiff's reputation, goodwill and sales.

43. Defendant's actions constitute willful infringement in violation of Plaintiff's trademark rights and incontestable trademark registration.

44. Plaintiff has been damaged by and Defendant has profited from Defendant's wrongful conduct in an amount to be proven at trial.

45. Plaintiff has no adequate remedy at law. The conduct of Defendant has caused and, unless enjoined, will continue to cause irreparable damage to the rights of Plaintiff in its marks and to its business, reputation, and goodwill.

## COUNT II

### *Federal Unfair Competition [15 U.S.C. § 1125(a)(1)]*

46. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as though the same were fully set forth herein.

47. This count arises under the Lanham Act, in particular, 15 U.S.C. § 1125(a)(1).

48. By misappropriating and using Plaintiff's PROGRESSIVE Marks, Defendant misrepresents and falsely describes to the general public the origin and source of Defendant's services and creates a likelihood of confusion by the consumer as to both the source and sponsorship of such services.

49. Upon information and belief, Defendant's actions were done willfully with: (i) full knowledge of Plaintiff's success and goodwill and public recognition of Plaintiff's PROGRESSIVE Marks; (ii) full knowledge that its conduct constituted misrepresentations of the nature, characteristics, and qualities of its and/or Progressive's services and commercial activities; and (iii) the express intent to deceive the purchasing public.

50. Plaintiff has been damaged by and Defendant has profited from Defendant's wrongful conduct in an amount to be proven at trial.

51. Plaintiff has no adequate remedy at law. The conduct of Defendant described above has caused and, unless enjoined, will continue to cause irreparable damage to the rights of Plaintiff in its marks, and to its business, reputation, and goodwill.

## COUNT III

### *Federal Trademark Dilution [15 U.S.C. § 1125(c)]*

52. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as though the same were fully set forth herein.

53. This count arises under the Lanham Act, in particular, 15 U.S.C. § 1125(c).

54. Plaintiff's registered U.S. trademarks, as set forth in the preceding paragraphs and Exhibit A hereto, have been used throughout the United States for decades and are widely recognized by the general consuming public. The public generally associates and identifies Plaintiff's marks, including the PROGRESSIVE (Stylized) Mark as embodied in U.S. TM Reg. No. 1971522, with Plaintiff, such that they have become famous and distinctive.

55. Defendant's use of the Infringing Logo to advertise and sell its services commenced after Plaintiff's PROGRESSIVE Marks, including the PROGRESSIVE (Stylized) Mark, became famous.

56. The similarity between Defendant's Infringing Logo and Plaintiff's PROGRESSIVE (Stylized) Mark gives rise to an association between the marks in the minds of consumers.

57. The association between Plaintiff's PROGRESSIVE (Stylized) Mark and Defendant's Infringing Logo is likely to impair the distinctiveness and/or harm the reputation of Plaintiff's PROGRESSIVE (Stylized) Mark.

58. Plaintiff has been damaged by and Defendant has profited from Defendant's wrongful conduct in an amount to be proven at trial.

59. Plaintiff has no adequate remedy at law. The conduct of Defendant has caused and, unless enjoined, will continue to cause irreparable damage to the rights of Plaintiff in its marks and to its business, reputation, and goodwill.

## COUNT IV
### *Maryland Unfair Competition*

60. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as though the same were fully set forth herein.

61. This count arises under the common law of this State relating to unfair competition, palming off, and unprivileged imitation.

62. Plaintiff is the owner of all rights, title, and interest in and to the distinctive trade names, marks, designs, symbols, and logos used by Plaintiff by virtue of its good-faith, extensive promotion of its services with its advertising bearing such trade names, marks, designs, symbols, and logos (collectively "Plaintiff's Common Law Trademarks") as set forth in the preceding paragraphs of this Complaint and Exhibit A hereto.

63. Plaintiff's Common Law Trademarks are valid and legally protectable.

64. Upon information and belief, the unauthorized use by Defendant of Plaintiff's Common Law Trademarks alleged herein is likely to create confusion and mistake in the minds of the purchasing public as to the origin of the services and/or the affiliation of Defendant with Plaintiff and to cause consumers to believe such services are provided, endorsed or sponsored by Plaintiff, when in fact they are not.

65. Upon information and belief, Defendant has intentionally appropriated one or more of Plaintiff's Common Law Trademarks with the intent of causing confusion, mistake, and

deception as to the source of its services and with the intent to palm off its towing and hauling services as those of Plaintiff or third parties within Plaintiff's network, and as such, Defendant has committed unfair competition, palming off and unprivileged imitation under Maryland common law.

66. By its unauthorized use of Plaintiff's Common Law Trademarks, Defendant is improperly trading upon Plaintiff's enviable reputation and goodwill and is impairing its valuable rights in and to such marks.

67. Upon information and belief, the activities of Defendant complained of herein constitute willful and intentional acts of unfair competition, palming off, and unprivileged imitation with respect to Plaintiff's Common Law Trademarks.

68. Plaintiff has no adequate remedy at law. The conduct of Defendant has caused and, unless enjoined, will continue to cause irreparable damage to the rights of Plaintiff in its marks and to its business, reputation, and goodwill.

## COUNT V

*Violation of Maryland Consumer Protection Act*
*[MD Commercial Law Code § 13-408 (2024)]*

69. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as though the same were fully set forth herein.

70. This count arises under the Maryland Consumer Protection Act, MD Commercial Law Code § 13-408 (2024) et seq., and the common law of the State interpreting that statute.

71. Defendant has made false and misleading statements to consumers visually and, upon information and belief, orally, regarding its sponsorship, approval, status, affiliation, or connection with Plaintiff that have the capacity, tendency, and/or effect of deceiving or misleading consumers into believing such a sponsorship or approval exists and that Defendant's services are

of a particular standard, quality, or grade which they are not and/or possess a characteristic or benefit which they do not have.

72. Upon information and belief, Defendant fails to inform consumers that it is not sponsored, approved, affiliated, or connected with Plaintiff, which fact is material to consumers and deceives or tends to deceive consumers.

73. Defendant intends that consumers rely on its false and deceptive representations of its sponsorship, approval, status, affiliation, or connection with Plaintiff in order to promote and sell Defendant's towing services.

74. Defendant's aforementioned unauthorized activities damage Plaintiff's business by the use of deceit and unfair methods and are likely to cause confusion and mistake in the minds of the public as to the source and affiliation of the service provided, all in violation of the Maryland Consumer Protection Act.

75. Upon information and belief, Defendant's actions were done willfully with: (i) full knowledge of Plaintiff's enviable reputation and goodwill; and (ii) the express intent to trade on the value and goodwill in Plaintiff's marks, to cause confusion, and to mislead and deceive the purchasing public.

76. Plaintiff has no adequate remedy at law. The conduct of Defendant has caused and, unless enjoined, will continue to cause irreparable damage to the rights of Plaintiff in its marks and to the business, reputation, and goodwill of Plaintiff.

## **DEMAND FOR JUDGMENT**

WHEREFORE, Plaintiff respectfully demands that this Court enter judgment for it and against Defendant and further demands:

1.       That Defendant and its agents, servants, employees, representatives, successors, and assigns and all other persons, firms, or corporations in active concert or participation with Defendant who receive actual notice of an Order from this Court be preliminarily and permanently enjoined from:

(a)      directly or indirectly engaging in unfair competition with Plaintiff by means of any activities, including generally, but not limited to, conducting, promoting, and/or advertising its business under the trademark PROGRESSIVE, including but not limited to PROGRESSIVE in standard character form and the PROGRESSIVE (Stylized) mark, or any other activities which infringe Plaintiff's Common Law Marks or PROGRESSIVE Marks;

(b)      using Plaintiff's Common Law Marks and PROGRESIVE Marks and any marks similar thereto, or any reproduction, counterfeit, copy, or colorable imitation thereof, in connection with conducting, promoting, and/or advertising its business;

(c)      directly or indirectly engaging in unfair competition with Plaintiff by distributing print, broadcast, or other forms of advertising or promotional materials which in any manner misrepresent the nature, characteristics, or qualities of Plaintiff's or Defendant's services, or make use of the marks of Plaintiff as described herein; and

(d)      engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead, or deceive consumers, Defendant's customers, and/or members of the public to believe that, the actions of Defendant, or

      the services or products sold or offered for sale by Defendant or Defendant itself are connected with Plaintiff, are sponsored, approved, or licensed by Plaintiff, or are in some way connected or affiliated with Plaintiff.

2.     That Defendant be required:

    (a)     to pay Plaintiff such damages as Plaintiff has suffered in consequence of Defendant's above-described acts, including but not limited to the cost of corrective advertising; and

    (b)     to account for and pay to Plaintiff all gains, profits, benefits, and advantages derived from its unlawful practices complained of herein.

3.     That Plaintiff be awarded treble damages for Defendant's acts of unfair competition in accordance with 15 U.S.C. § 1117.

4.     That Plaintiff be awarded its attorneys' fees and costs incurred in this action, as well as prejudgment interest, in accordance with 15 U.S.C. § 1117 and MD Commercial Law Code § 13-408(b).

5.     That Plaintiff have such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  October 10, 2025                                Respectfully submitted,

                                                                        */s/ Dustin M. Dow*
                                                                        Dustin M. Dow (Maryland Bar No. 20533)
                                                                        ddow@bakerlaw.com
                                                                        Christina J. Moser (pro hac vice to be
                                                                        applied for)
                                                                        cmoser@bakerlaw.com
                                                                        Ohio Bar No. 0074817
                                                                        BAKER & HOSTETLER LLP
                                                                        127 Public Square Suite 2000
                                                                        Telephone: 216.621.0200


                                                                        *Attorneys for Plaintiff*
                                                                        *Progressive Casualty Insurance Company*